IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

```
WILLIAM D. LIGGETT,              )
                                 )
          Plaintiff,             )
                                 )
          v.                     )   CIVIL ACTION NO. 04-1363 (GBL)
                                 )
DONALD RUMSFELD,                 )
SECRETARY                        )
U.S. DEPARTMENT OF DEFENSE,      )
                                 )
          Defendant.             )
```

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant United States Department of Defense Secretary Donald L. Rumsfeld's Motion for Judgment on the Pleadings and for Summary Judgment.  Plaintiff William Liggett, an employee of the Defense Logistics Agency ("DLA"), asserts that he was unlawfully discriminated against and subjected to a hostile work environment on the basis of race and that Defendant retaliated against him in violation of Title VII of the Civil Rights Act of 1964.  42 U.S.C. § 2000e-2(a).  The issues before the Court are whether a material fact for trial exists regarding whether Defendant discriminated against Mr. Liggett on the basis of race and whether he was unlawfully retaliated against, as well as whether Defendant is entitled to judgment on the pleadings under Federal Rule of Civil Procedure 12© or judgment as a matter of law under Federal Rule of Civil Procedure 56.  The Court holds that Defendant's Motion for

1

Judgment on the Pleadings is granted in relation to all of Mr. Liggett's claims, except the claim that he was denied leave and suspended for ten days on the basis of race, because they are the only claims that constitute adverse employment actions.  The Court grants summary judgment for Defendant on all claims because there is no question of material fact for trial as to whether Mr. Liggett suffered retaliation, racial discrimination, and a hostile work environment in violation of Title VII.

## I.  BACKGROUND

Plaintiff William Liggett ("Mr. Liggett," "Plaintiff"), an African-American male, is employed by United States Department of Defense, Defense Logistics Agency ("DLA") as an Information Technology ("IT") specialist.  Mr. Liggett has filed a complaint against Donald Rumsfeld, Secretary of the U.S. Department of Defense alleging that his employer, DLA, engaged in discriminatory practices against Mr. Liggett on the basis of race and subjected him to a hostile work environment and retaliated against him in violation of Title VII of the Civil Rights Act of 1964.  42 U.S.C. § 2000e-2(a).

*Procedural Background*

On May 20, 1998, Mr. Liggett filed a formal complaint of discrimination alleging that DLA failed to promote him because of

his race.  Am. Compl. ¶ 6.  DLA issued its Final Agency Decision in August 2000.  Mr. Liggett appealed this decision to the United States District Court for the District of Columbia.  The case was transferred to this Court and ultimately on May 4, 2004, this Court dismissed the claim for failure to exhaust administrative remedies.  *Id*. at ¶ 9.

In July 2002, Mr. Liggett filed a formal complaint of discrimination with the DLA's Equal Employment Opportunity ("EEO") Office ("July Complaint"), alleging that DLA discriminated against him because of his race and took reprisal against him because of his prior EEO complaints.  *Id*. at ¶ 10.  In November 14, 2002, Mr. Liggett filed a second formal complaint of discrimination ("November Complaint") alleging that he was discriminated against on the basis of race, and specifically that he was suspended for a period of ten days for the alleged misuse of a government computer because of race and reprisal.  Am. Compl. ¶ 15.  In December 2002, the DLA EEO Office consolidated Mr. Liggett's July 2002 and November 2002 complaints.  On August 18, 2004, Mr. Liggett received the Final Agency Decision and Notice of Right to Appeal and to Sue.  Mr. Liggett has filed this suit within 90 days of his receipt of the Notice of Right to Sue.

*Factual Background*

Between November 2001 and February 2003, Mr Liggett worked

3

on various assignments related to the Mercator project.  *Id*. at ¶
24.  Mr. James Smith, an African-American male, was the Lead IT
Specialist and was Mr. Liggett's team leader.  Lt. Col. Virostko,
a white male, was Deputy Director, DLA Systems Integration Office
and Mr. Liggett's first level supervisor.  Mr. Roger Winters, a
white male, was the Director of the DLA Systems Integration
Office, Energy Commodity and Mr. Liggett's second level
supervisor.  *Id*. at ¶¶ 19-21.  Both Mr. Virostko and Mr. Smith
were aware of Mr. Liggett's EEO activity.  *Id*. at 22.

On May 10, 2002, Mr. Liggett's personal computer was
confiscated.  The confiscation resulted in the loss of a
significant amount of Mr. Liggett's work relating to the Mercator
project.  Am. Compl. ¶ 29.  On May 22, 2002, Mr. Liggett was
denied annual leave for the period May 23-30, 2002 and was
advised that he could not take annual leave until the Mercator
project was completed.  The Mercator project was a multiple year
project that had been uncompleted for several years prior to the
time Mr. Liggett was denied leave on May 22, 2002.  Am. compl. ¶
31.

On May 23, 2002, Mr. Liggett was advised by Mr. Smith, his
team leader, that he would be responsible for system
administration, database administration, and application
development for the Mercator production server.  Mr. Liggett
asserts that these duties were beyond his capabilities as a GS-12

4

IT Specialist.  Furthermore, Mr. Liggett claims he was not provided with the appropriate software or hardware to properly perform the work requested and was not properly trained in system administration or application development with this particular Mercator software application.  *Id*. at ¶ 34.  On July 16, 2002, Lt. Col. Virostko counseled Mr. Liggett for alleged excessive use of sick leave.  Am. Compl. ¶ 37.

The Defendant states that in March and April 2002, as a result of an unrelated criminal investigation, the Criminal Investigation Activity of the Defense Logistics Agency conducted a review of the agency's firewall log for March 6, 2002.  The review revealed that Mr. Liggett allegedly accessed several sexually explicit internet sites.  Def.'s Mem. Supp. of Def.'s Mot. for J. on Pleading and Summ. J. [hereinafter "Def.'s Mem."] at 1, Ex. 1, Report of Investigation, at 459-460.  As a result, the defendant asserts that Mr. Liggett's computer was examined and sexually explicit materials were found stored on the computer's hard drive, as well as other indications that sexually explicit web sites had been accessed on several occasions in the period from December 12, 2001 to May 6, 2002.  *Id*.  The computer also contained Internet Explorer bookmarks which led to sexually explicit web sites.  *Id*.

In response, Mr. Liggett asserted that he had not accessed the pornographic web sites.  He argued that there were other ways

that the sexually explicit information could have gotten on his computer, that his password was not secure, and that the computer assigned to him had not been new when issued.  *Id*. at 1, Ex. 3, Pls. Response to Notice of Proposed Suspension.

On August 7, 2002, Lt. Col. Virostko served Mr. Liggett with a Proposed Notice of Suspension Letter for alleged misuse of government property.  On August 8, 2002, Mr. Smith, Mr. Liggett's Team Leader, wrote a memorandum criticizing Mr. Liggett's performance on the Mercator project.  *Id*. at ¶¶ 38, 39.  On September 3, 2002, Plaintiff was notified that the proposed ten day suspension would be imposed and he was suspended for ten days.  Am. Compl. ¶ 40.  Plaintiff has attempted to obtain a record of the computer at issue being assigned to Mr. Liggett or the computer itself for study but has been unsuccessful.  Pl.'s Opp. to Def.'s Mot for J. on Pleadings and Summ. J. [hereinafter "Pl.'s Opp."] at 5.

On October 21, 2002, Lt. Col. Virostko removed Mr. Liggett from the Mercator project and assigned him to a data entry role, where he stayed until February 20, 2003.  During this time period, Mr. Liggett filed the November 2002 EEO Complaint.  On December 17, 2002, Lt. Col. Virostko again counseled Mr. Liggett for allegedly misusing government property.  Am. Compl. ¶ 46. Mr. Liggett subsequently amended the November Complaint to include this information.  On January 6, 2003, Lt. Col. Virostko

gave Mr. Liggett a "minimally acceptable" annual rating, citing
his performance on the Mercator project.  Prior to this rating,
Mr. Liggett had received only "fully successful" ratings, the
highest possible rating.  *Id*. at 48-50.  Despite this low rating,
Mr. Liggett was not placed on a performance improvement plan.
Subsequently, Mr. Liggett again amended his November Complaint to
include this information.

From October 2003 to October 2004, while on Ms. Patricia
Russell's team, Mr. Liggett was not given substantive
assignments, but instead was assigned duties that were not
commensurate with his training and experience or position
description, such as moving equipment, and preparing offices for
the arrival of new employees.  *Id*. at ¶¶ 59-60.


## II.  DISCUSSION

### A.  Standard of Review

*Judgment on the Pleadings*

Pursuant to Rule 12©, a party may move for judgment on the
pleadings "[a]fter the pleadings are closed but within such time
as not to delay the trial."  FED. R. CIV. P. 12©.  In ruling on a
motion under Rule 12©, the court applies the standard for a Rule
12(b)(6) motion.  *Newport News Indus. v. Dynamic Testing Inc.*,
130 F. Supp. 2d 745, 749 (citing *Edwards v. City of Goldsboro*,
178 F.3d 231, 243 (4th Cir. 1999)).  Specifically, all factual

allegations in the complaint are presumed to be true and all
reasonable inferences are granted as to the non-moving party.
*Id*. (citing *Westmoreland v. Brown*, 883 F. Supp. 67, 70 (E.D.Va.
1995)).  "However, the court is not bound to accept as true
conclusory allegations regarding the legal effect of the facts
alleged."  *Id.* (citing *Westmoreland*, 883 F. Supp at 70 (internal
citations omitted)).

*Summary Judgment*

     Under Rule 56©, the Court must grant summary judgment if the
moving party demonstrates that there is no genuine issue as to
any material fact, and that it is entitled to judgment as a
matter of law.  In reviewing a motion for summary judgment, the
Court views the facts in a light most favorable to the non-moving
party.

     Once a motion for summary judgment is properly made and
supported, the opposing party has the burden of showing that a
genuine dispute exists.  *See Matsushita Elec. Indus. Co. v.
Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  The mere
existence of some alleged factual dispute between the parties
will not defeat an otherwise properly supported motion for
summary judgment; the requirement is that there be no genuine
issue of material fact.  *See Anderson v. Liberty Lobby, Inc.,* 477
U.S. 242, 248 (1996).  "Rule 56(e) requires the nonmoving party

8

to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).

## B.  Analysis

*Judgment on the Pleadings - Adverse Employment Action*

The Court holds that Defendant is entitled to judgment on the pleadings as to Plaintiff's claims, other than his claims regarding the ten day suspension and denial of leave, because those claims do not constitute "adverse employment actions."  To state a prima facie claim of discrimination, the plaintiff must first identify an act of discrimination as well as some evidence that the alleged act of discrimination resulted in an "adverse employment action."  *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985).  The Fourth Circuit held that the term "adverse employment action" "include[s] any retaliatory act or harassment if, but only if, that act or harassment results in an adverse effect on the effect on the 'terms, conditions, or benefits' of employment."  *Von Gunton v. Maryland, 243 F.3d 858*, 866 (4th Cir. 2001) (citations omitted); *Munday v. Waste Mgmt.*, 126 F.3d at 243 (4th Cir. 1997) (manager's conduct in yelling at employee and telling others to spy on her was not an adverse

9

employment action as required to support retaliation claim under Title VII). In *James v. Booz-Allen & Hamilton Inc.*, 368 F.3d 371 (4th Cir. 1999), the Fourth Circuit stated:

> The mere fact that a new job assignment is less appealing to the employee, however, does not constitute an adverse employment action. A 'reassignment can only form the basis of a valid Title VII claim if the plaintiff can show that the reassignment had some significant detrimental effect.'

*Id.* at 376. (citing *Von Gunten*, 243 F.3d at 868)(quoting Boone v. *Goldin*, 178 F.3d 253, 256 (4th Cir. 1999)). In *James*, the Fourth Circuit affirmed the district court's grant of summary judgment to the defendant and explained that the Plaintiff, "did not allege discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion–the typical requirements for a showing of an 'adverse employment action' that can support a Title VII claim." *Id.* at 255 (quoting *Page v. Bolger,* 645 F.2d 227, 233 (4th Cir. 1981)).

In this case, Plaintiff asserts that he was assigned duties unrelated to his job description including "data entry" tasks; assigned to perform various tasks associated with the Mercator Project; denied annual leave for the period of May 23-30, 2002; counseled regarding abuse of sick leave; received a performance rating of "minimally successful;" and was reassigned to another Team Leader with different duties. Am. Compl. ¶¶ 11, 12, 24-34, 30, 36- 41, 43-44, 55, 57-60. Furthermore, he asserts that he

was suspended for a period of ten days for the alleged misuse of a government computer.  *Id.* ¶ 15.  In the instant case, Mr. Liggett was not fired or even demoted, he did not suffer a loss of compensation or benefits.  Accordingly, only the ten day suspension and the denied request for leave are adverse employment actions remediable under Title VII.  The court grants Defendant's Motion for Judgment on the Pleadings with respect to the other claims because they do not constitute adverse employment actions.

   *Hostile Work Environment*

   Defendant is entitled to summary judgment on the claim of the creation of a hostile work environment in violation of Title VII of the Civil Rights Act, because his claims are not severe and pervasive and do not alter the conditions of his employment. To survive summary judgment on a hostile work environment claim under Title VII, a plaintiff must establish that a reasonable jury could find that Defendant's actions were (1) unwelcome; (2) based on race; (3) severe or pervasive enough to alter the conditions of employment and to create an abusive atmosphere; and (4) that some basis exists for imputing liability to the employer.  *See Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183-84 (4th Cir. 2001); *see also White v. BFI Waste Services*, 375 F.3d 288 (4th Cir. 2004).  "In assessing whether a work

11

environment is objectively hostile, a court must consider 'all of the circumstances,' including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it interferes with an employee's work performance.  No single factor is determinative." *Anderson v. G.D.C. Com.*, 281 F.3d 452, 459 (4th Cir. 2002) (citation omitted).  In this case, the incidents on which Defendant bases his claim of a racially hostile work environment include denial of use of sick leave, denial of promotions, a poor work rating, receiving assignments not within his job description, and being transferred to another team.  These incidents were episodic, there are no allegations of the use of racial slurs or racial humiliation, and Plaintiff's complaints are not sufficiently severe or pervasive to alter the terms of Plaintiff's work environment.  Accordingly, Mr. Liggett's assertions cannot support a hostile work environment on the basis of race claim and the court grants summary judgment on the claim that defendant created a hostile work environment in violation of Title VII.

*Retaliation*

The Court grants summary judgment for defendant on the basis of retaliation because although Plaintiff has stated a prima facie case of retaliation, he does not make a showing that the

defendant's non-discriminatory reasons are mere pretext.  In order to establish a prima facie claim of retaliation in violation of Title VII, a plaintiff must show that "1) the employee engaged in protected activity; 2) the employer took adverse employment action against the employee; and 3) a causal connection existed between the protected activity and the adverse action." *Munday*, 126 F.3d at 242 (citing *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985)).  The employer may then rebut the prima facie case by showing that there was a legitimate non-discriminatory reason for the adverse action, after which the burden shifts back to the plaintiff to show that those reasons are pretextual.  *Id.* (citations omitted); see *also Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).  Plaintiff meets the first requirement because he engaged in protected EEO activity by filing complaints.  Plaintiff also meets the second requirement because he asserts that he was denied leave and suspended for ten days, which constitute adverse employment actions.  Additionally, Plaintiff meets the third requirement because he alleges that these actions were taken in retaliation for his protected EEO activity.  Accordingly, Plaintiff has established a prima facie case of retaliation and the burden then shifts to the defendant to articulate a legitimate non-discriminatory reason for the adverse employment actions.  *See id.* at 252.

The defendant has met its burden by offering a non-discriminatory reason for Mr. Liggett's ten day suspension and the denial of leave.  The employer may rebut a prima facie case of retaliation by showing that there was a legitimate non-discriminatory reason for the adverse action, after which the burden shifts back to the plaintiff to show that those reasons are pretextual.  *Munday*, 126 F.3d at 242 (citations omitted).  In this case, the defendant asserts that Mr. Liggett was suspended for ten days based on the inappropriate use of his personal office computer.  Def.'s Mem. at 9.  The defendant further asserts that the inappropriate use was discovered as a result of an unrelated criminal investigation.  *Id*., Ex. 1 at 459.  As a result, the defendant asserts that Mr. Liggett's computer was examined and sexually explicit materials were found stored on the computer's hard drive, as well as other indications that sexually explicit web sites had been accessed on several occasions in the period from December 12, 2001 to May 6, 2002.  *Id*.  The computer also contained Internet Explorer bookmarks which led to sexually explicit web sites.  *Id*.  Furthermore, no other employees in the section of the DLA managed by Mr. Winters engaged in similar conduct.  *Id*., Ex. 4 at 272.  Plaintiff was given a Notice of Proposed Discipline and given an opportunity to respond.  *Id*. at 10.  Plaintiff was ultimately notified of the decision by Mr. Winters that it was "more likely than not" that Mr Liggett had

14

accessed the pornographic websites.  *Id.*

The defendant also offers a non-discriminatory reason for the denial of sick leave, noting that the sick leave request received on May 22, 2002 for leave from May 23-31, 2002 was denied because it was untimely and there was a lot of work to be done on the Mercator project prior to the arrival of the contractor.  Furthermore, Mr. Winters states that "[t]he contractor had given [Mr. Liggett] a list of things he should have done prior to his arrival. [Mr. Liggett] put in a leave slip the next day and gave management no opportunity to negotiate or even approve the leave."  *Id.*, Ex. 5, Affidavit of Roger Winters, at 270.  Since the defendant has provided a non-discriminatory reason for the adverse employment actions Plaintiff has suffered, the burden shifts back to Plaintiff to demonstrate the existence of a genuine issue of fact for trial that the defendant's reasons are a mere pretext for discrimination.

Plaintiff does not offer any evidence that the defendant's proffered reasons for denying him leave that was untimely requested and suspending him for ten days for misuse of government property are mere pretext.  If the defendant articulates a non-discriminatory reason for the adverse employment actions alleged, the "plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true

15

reasons, but were a pretext for discrimination." *Burdine*, 450
U.S. at 253 (citing *McDonnell Douglas*, 411 U.S. at 804).  A
plaintiff may show that defendant's proffered reason was mere
pretext by "persuading the court that a discriminatory reason
more likely motivated the employer or indirectly by showing that
the employer's proffered explanation is unworthy of credence.
*Id*. at 256 (citing *McDonnell Douglas*, 411 U.S. at 804-805).
Accordingly, the Court grants summary judgment in favor of
defendant because Plaintiff has not demonstrated the existence of
a question of fact on the issue of pretext.

        *Spoliation of Evidence*
    The Court refuses Plaintiff's request for an adverse
inference based on DLA's failure to preserve the hard drive of
Mr. Liggett's computer, which he allegedly used to view
pornographic web sites.  The spoliation of evidence rule allows
the drawing of an adverse inference against a party whose
intentional conduct causes the destruction of evidence or against
one who fails to preserve evidence.  *Hodge v. Walmart Stores*, 360
F.3d 446 (4th Cir. 2004).  "But such an inference 'cannot be
drawn merely from his negligent loss or destruction of evidence;
the inference requires a showing that the party knew the evidence
was relevant to some issue at trial and that his willful conduct
resulted in its loss or destruction.'"  *Id*. at 450 (citing

*Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148 (4th Cir. 1995)). Furthermore, "some quantum of blameworthiness is required before sanctions for spoliation may obtain." *Trigon v. United States*, 204 F.R.D. 277 (E.D.Va. 2001). The Court notes that Defendants should have preserved or "imaged" the hard drive of Mr. Liggett's computer as evidence, however, DLA's failure to do so does not in and of itself suggest fraud or fabrication of evidence. In this case, the undisputed evidence is that the misuse of Mr. Liggett's computer was brought to the attention of his supervisors by the Criminal Investigation Activity of the Defense Logistics Agency in the course of an unrelated investigation. Defendant submits the DLA Criminal Investigations Activity Report of Investigation, which details the investigative activities taken in regard to Mr. Liggett's alleged misuse of a government computer. Def.'s Mem. at Ex. 1. Mr. Liggett's supervisors did not themselves either initiate the investigation by the Criminal Investigative Activity, nor did they examine his computer themselves. Furthermore, Plaintiff does not assert in his affidavit or provide any evidence that the Criminal Investigation Activity's report was motivated by race or his prior protected EEO Activity. The Court grants summary judgment for Defendants because Mr. Liggett raises no issue of genuine fact for trial regarding whether the government's investigation of the misuse of his computer to view pornographic web sites and subsequent failure to

17

preserve the hard drive of his computer was based on race or retaliation for EEOC activity.

Additionally, Plaintiff provides no evidence that his untimely request for leave after he had been advised that he had to complete preparations for a contractor's arrival and that he needed to be present with the contractor was a pretext for discrimination.  Plaintiff does not come forward with any evidence that any other similarly situated employees had an untimely request for leave granted.  Since Plaintiff does not present any evidence to show that the Defendant's reasons for the denial of Plaintiff's untimely request for leave or his ten day suspension for misuse of government property were mere pretext, the Court grants the Defendant's motion for summary judgment.

### *Failure to Exhaust Administrative Remedies -Denial of Promotions*

Mr. Liggett's claim that he was denied promotions is beyond the scope of this action because he failed to exhaust administrative remedies since he did not raise denial of promotions in his 2002 EEOC complaints.  A claimant under Title VII must exhaust his administrative remedies by first raising his claim before the EEOC.  *Sloop v. Mem'l Mission Hosp. Inc.,* 198 F.3d 147, *148.*  As the Fourth Circuit noted in *Bryant v. Bell Atlantic Maryland*, 288 F.3d 124 (4th Cir. 2002), the EEOC charge defines the scope of the plaintiff's right to institute a civil

18

suit. *Id.* at 132 (quoting *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000). "...[T]he scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." See *id.* (quoting *Chisholm v. United States Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981). The Fourth Circuit, and other district courts within the Fourth Circuit, have rejected a plaintiff's attempt to add additional claims to a judicial complaint where the administrative charge failed to encompass such claims. *Taylor v. Virginia Union University*, 193 F.3d 219, 239 (4th Cir. 1999) (plaintiff's claims of sexual harassment fell outside the scope of an administrative complaint raising gender discrimination arising from a failure to promote claim); *Miller v. Runyon*, 88 F. Supp. 2d 461 (M.D.N.C. 2000) (failure to allege any harassing conduct by supervisors in his administrative complaint barred Plaintiff from raising a harassment claim in district court); *Nicol v. Imagenatrix, Inc.*, 767 F. Supp. 744 (E.D. Va. 1991) (holds that "the crucial element of a charge of discrimination is the factual statement contained therein.") (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970)). In this case, Mr. Liggett filed complaints with the EEOC in both July 2002 and November 2002. Plaintiff does not raise the issue of denial of promotions in either the July 2002 or the November 2002 EEOC complaint. *See* Pl.'s Opp. at

Exs. 16-24.  Although Plaintiff does state in his complaint filed in this Court, that as a result of the defendant's violation of Title VII, he has been damaged in several ways including being "denied promotions in his field," he does not state that he alleged the denial of promotions in his 2002 EEOC complaints. Am. Compl. at ¶ 65.  Furthermore, the final decision of the DLA makes no mention of a denial of promotions.  *See* Compl. at Ex. 1. The Court notes that Defendant does allege that he was denied promotions in his 1998 EEOC complaint, however, DLA issued its Final Agency Decision in regards to Mr. Liggett's 1998 EEOC complaint in August 2000.  Mr. Liggett subsequently appealed this decision to the United States District Court for the District of Columbia.  The case was transferred to this Court and ultimately dismissed for failure to exhaust administrative remedies, and therefore, the 1998 complaint does not define the scope of this complaint.  *Id*. at ¶¶ 6, 9.  Accordingly, the Court grants summary judgment to Defendant on Plaintiff's claim regarding denial of promotions because he failed to raise the issue in his 2002 EEOC complaints on which this complaint is based.

————

*Failure to Allege Prima Facie Case - Denial of Promotions*

Even assuming *arguendo* that Plaintiff did properly exhaust administrative remedies with respect to an alleged denial of promotions based on race, which he does not, this Court holds

that Plaintiff fails to state a prima facie case of a denial of promotion based on race discrimination.  In order to establish prima facie case of racial discrimination in promotions under § 1981 or Title VII, Mr. Liggett must follow the *McDonnell Douglas* burden-shifting framework, under which he must show that (1) he is member of protected group, (2) he applied for position in question, (3) he was qualified for that position, and (4) defendants rejected his application under circumstances that give rise to inference of unlawful discrimination*. McDonnell Douglas*, 411 U.S. 792; *See also Bryant v. Aiken Reg. Med. Ctrs. Inc.*, 333 F.3d 536, 544-45 (4th Cir. 2003).  In this case, Mr. Liggett states in his affidavit that he applied for several GS-13 positions, that he was ranked highly, but ultimately not selected for the positions.  See Pl.'s Opp., Ex. 1 at 6-7.  Mr. Liggett fails to allege facts regarding the race of the selected applicants.  He also does not state the qualifications of the applicants selected for the positions, so the Court does not know whether or not they were more or less qualified than Mr. Liggett. Mr. Liggett has not alleged sufficient facts to give rise to an inference of unlawful discrimination, and therefore, has failed to state a prima facie case of discrimination with regards to a denial of promotions.  The Court grants Defendant's Motion for Summary Judgment because Plaintiff did not exhaust his administrative remedies and does not state a prima facie case

21

with respect to his claim of denial of promotions based on racial discrimination and retaliation.

### III.      CONCLUSION

The Court grants Defendant Donald Rumsfeld, Secretary, U.S. Department of Defense's Motion for Judgment on the Pleadings in relation to all of Mr. Liggett's claims, except the claims that he was denied leave and suspended for ten days on the basis of race, because they constitute adverse employment actions.  The Court grants summary judgment for Defendant on all claims because there is no question of material fact for trial as to whether Mr. Liggett suffered retaliation, racial discrimination, and a hostile work environment in violation of Title VII.

For the foregoing reasons, it is hereby

ORDERED that Defendant Donald Rumsfeld's Motion for Judgment and for Summary Judgment is GRANTED.

The Clerk is directed to enter a separate judgment order pursuant to Rule 58 of the Federal Rules of Civil Procedure and forward a copy of this Memorandum Order to counsel.


Entered this ___29th____ day of August, 2005.




_____    /s/_____
                                            Gerald Bruce Lee
                                            United States District Judge

Alexandria, Virginia
08/29/05